IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE, EASTERN DIVISION.

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | **WESTERN DISTRICT OF TN** |
| vs. | ) | No. 08-10119 **FILED IN OPEN COURT:** |
| | ) | DATE: 3/29/10 |
| DANIEL COWART, | ) | TIME: 3:07 p.m. |
| | ) | INITIALS: _eu_ |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States of America, by and through undersigned counsel, and the Defendant, **DANIEL COWART,** by and through his counsel, have entered into the following agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. This Plea Agreement constitutes the entire agreement between the parties. The parties agree that any issues not specifically addressed by this Plea Agreement shall be resolved by the Court in accordance with the applicable statutes, guidelines, rules, and case law. The parties agree as follows:

1.  **CHARGES IN THIS CASE**

    The Defendant acknowledges that he has been charged in the Superseding Indictment in this case with conspiracy against civil rights, in violation of Title 18, United States Code, Section 241; conspiracy, in violation of Title 18, United States Code, Section 371; interstate transportation of an unregistered short-barreled shotgun, in violation of Title 26, United States Code, Sections 5841, 5861(j), and 5871, and Title 18, United States Code, Section 2, interstate transportation of a firearm for the purpose of committing a felony, in violation of Title 18, United States Code, Sections 924(b) and 2; unlicensed transportation in interstate commerce of an unauthorized short-barreled shotgun, in violation of Title 18, United States Code, Sections 922(a)(4) and 2; possession of a short-barreled

shotgun in violation of Title 26, United States Code, Sections 5845, 5861(c), 5871, and Title 18, United States Code, Section 2; threatening to kill and inflict bodily harm upon a major candidate for the office of President of the United States, in violation of Title 18, United States Code, Section 879; intentional damage to religious real property because of the religious character of that property, in violation of Title 18, United States Code, Section 247; and discharge of a firearm during and in relation to a crime of violence for which he may be prosecuted in a Court of the United States, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

The Defendant further acknowledges that, with respect to the charges of conspiracy against civil rights, conspiracy, interstate transportation of a firearm for the purpose of committing a felony, and threatening to kill and inflict bodily harm upon a major candidate for the office of President of the United States, the Superseding Indictment additionally alleged that he selected a victim or class of victims as the intended victim or victims of the crimes because of the actual and perceived race, color, national origin, and ethnicity of those people.

The Defendant has read the charges against him contained in the Superseding Indictment, and those charges have been fully explained to him by his attorney. The Defendant fully understands the nature and elements of the crimes with which he has been charged.

2.   **CHARGES TO WHICH THE DEFENDANT IS PLEADING GUILTY**

The Defendant agrees to plead guilty to Counts 2, 3, 4, 5, 6, 8, 9, and 10 of the Superceding Indictment, which charges him with violations of 18 U.S.C. §§ 2247(a), 371, 879, 922(a)(4), 922(u), 924(b), 924(c), and 26 U.S.C. §§ 5841, 5861(c), 5861(j), and 5881 in the above-styled cause. The Defendant further agrees that there is a factual basis for this plea. At the conclusion of sentencing, the United States agrees to move to dismiss Count 1 of the Superceding Indictment.

3.  **PENALTIES**

The Defendant and the United States understand and agree that the offenses to which the Defendant will enter a plea of guilty carry the following maximum penalties; with respect to Count 2 of the Superceding Indictment, not more than five years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 3 of the Superceding Indictment, not more than ten years imprisonment, a fine of not more than $10,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 4 of the Superceding Indictment, not more than ten years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 5 of the Superceding Indictment, not more than five years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 6 of the Superceding Indictment, not more than ten years imprisonment, a fine of not more than $10,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 8 of the Superceding Indictment, not more than five years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 9 of the Superceding Indictment, not more than twenty years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100; with respect to Count 10 of the Superceding Indictment, not less than ten years imprisonment, a fine of not more than $250,000, not more than three years of supervised release, and a special assessment of $100.

4.  **NATURE OF PLEA AGREEMENT**

This Plea Agreement is entirely voluntary and represents the entire agreement between the

United States and the Defendant regarding th Defendant's criminal liability in case 1:08-CR-10119-JDB.

5. **BASIS FOR PLEA**

The Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 2, 3, 4, 5, 6, 8, 9, and 10 of the Superceding Indictment.

6. **SENTENCING FACTORS**

The Defendant and the United States understand that the Court will take account of the United States Sentencing Guidelines and the sentencing factors set out in 18 U.S.C. § 3553(a), and will consider the advisory Sentencing Guidelines range when imposing the Defendant's sentence. The parties acknowledge that the Court will not be bound by that advisory Sentencing Guidelines range and may impose a sentence outside of that range if the court deems such a sentence appropriate in light of the statutory sentencing factors and the further agreement between the Defendant and the United States set forth in Paragraph 10 below.

7. **ACCEPTANCE OF RESPONSIBILITY**

Assuming the Defendant, after entering into this agreement, continues to clearly demonstrate acceptance of responsibility to the satisfaction of the United States through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), and the United States will move for an additional one-level reduction pursuant to U.S.S.G. §3E1.1(b).

8. **GUIDELINES ESTIMATE**

The United States and the Defendant are aware that the Sentencing Guidelines are advisory, that the Court is not bound by the Guidelines, and that the Court may impose any sentence within

the statutory range so long as that sentence is merited by the factors set out in 18 U.S.C. § 3553(a). The parties further attest that they have not discussed or reached agreement with respect to any calculations under the Guidelines. With that understanding, the United States provides the following estimate at the Defendant's request, with the understanding that this estimate is not binding on either party or on the Court.

With respect to Count Two of the Superceding Indictment, the United States estimates a base offense level of 33 under U.S.S.G. §2A1.5(a) (Conspiracy or Solicitation to Commit Murder), with a 3-level adjustment for Hate Crime Motivation under U.S.S.G. §3A1.1(a), yielding an adjusted offense level of 36 for Count Two.

With respect to Count Three of the Superceding Indictment, the United States estimates a base offense level of 18 under U.S.S.G. §2K2.1(a)(5) (Unlawful Receipt, Possession, or Transportation of Firearms). With no adjustments, the offense level for Count Three is 18.

With respect to Count Four, the United States estimates a base offense level of 33 under U.S.S.G. §2A1.5(a) (Conspiracy or Solicitation to Commit Murder), with a 3-level adjustment for Hate Crime Motivation under U.S.S.G. §3A1.1(a), yielding an adjusted offense level of 36 for Count Four. The United States reaches this estimate by applying U.S.S.G. §2K2.1(c)(1)(A) (Unlawful Receipt, Possession, or Transportation of Firearms), which contains a cross-reference to U.S.S.G. §2X1.1 (Attempt, Solicitation, or Conspiracy), which in turn cross-references to U.S.S.G. §2A1.5(a).

With respect to Count Five, the United States estimates a base offense level of 18 under U.S.S.G. §2K2.1(a)(5) (Unlawful Receipt, Possession, or Transportation of Firearms). With no adjustments, the offense level for Count Five is 18.

With respect to Count Six, the United States estimates a base offense level of 18 under

U.S.S.G. §2K2.1(a)(5) (Unlawful Receipt, Possession, or Transportation of Firearms). With no adjustments, the offense level for Count Six is 18.

With respect to Count Eight, the United States estimates a base offense level of 12 under U.S.S.G. §2A6.1(a)(1) (Threatening or Harassing Communications), with a 3-level adjustment for Hate Crime Motivation under U.S.S.G. §3A1.1(a), yielding an adjusted offense level of 15 for Count Eight.

With respect to Count Nine, the United States estimates a base offense level of 10 under U.S.S.G. §2H1.1(a)(3) (Offenses Involving Individual Rights), with a 3-level adjustment for Hate Crime Motivation under U.S.S.G. §3A1.1(a), yielding an adjusted offense level of 13 for Count Nine.

Finally, with respect to Count Ten, involving a statutory minimum under 18 U.S.C. §924(c), the United States estimates a Guidelines adjustment under U.S.S.G. §2K2.4 of 120 months consecutive to the Guidelines range.

Based on the grouping rules covered in Guideline §3D1.4, the United States estimates a combined offense level of 38. The United States further estimates that the Defendant will receive 3 points for acceptance of responsibility under U.S.S.G. §3E1.1, yielding an adjusted offense level of 35. The United States estimates that the Defendant will fall into Criminal History Category I, which would yield an estimated Guideline range of 288-330 months if the Defendant entered into this Agreement.

Neither this estimated Guidelines range nor the actual Guidelines range determined for the Defendant is binding on the Court. Both the United States and the Defendant recognize that the Court, guided by 18 U.S.C. §3553(a), may, after considering the Guidelines range, determine that

the appropriate sentence for the Defendant falls anywhere within the statutory range or as otherwise may be deemed appropriate in consideration of the agreement between the Defendant and the United States set forth in Paragraph 10 below.

Regarding the issue of guilt, the Defendant hereby waives all rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which he is agreeing to plead guilty. The Defendant further waives any trial rights that would have been available if he exercised his right to go to trial.

Regarding sentencing, the Defendant is aware that 18 U.S.C. §3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal the sentence if the Court accepts this agreement and imposes a sentence within or below the Sentencing Guidelines range calculated by the Court and within the statutory range prescribed by the Superceding Indictment. The Defendant also knowingly and voluntarily waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 18 U.S.C. §3582, 28 U.S.C. §2255, and/or 28 U.S.C. §2241. Such a waiver does not apply, however, to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

10.  **FED. R. CRIM. P. 11(c) JUDICIAL CONSIDERATION OF THIS PLEA AGREEMENT AND SENTENCING AGREEMENT BETWEEN DEFENDANT AND UNITED STATES**

In consideration for the Defendant's plea and the impact upon the Guidelines calculations of 18 U.S.C. §924(c) and U.S.S.G §2K2.4, the Defendant agrees at sentencing not to seek a sentence below 144 months and the United States agrees not to seek a sentence above 216 months. The

Defendant understands and agrees that federal sentencing law requires the Court to impose a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2), and that the Court must consider the advisory United States Sentencing Guidelines in effect at the time of the sentencing in determining his sentence. The Defendant also understands that sentencing is within the discretion of the Court and that the Court may accept this agreement, reject it, or defer a decision until the Court has reviewed the presentence investigation report. If the Court rejects this Plea Agreement, then the Court will inform the parties that it has done so, advise the Defendant personally that the Court is not required to follow the Plea Agreement, and give the Defendant an opportunity to withdraw the plea.

11. **STATEMENT OF EXCLUSIVITY**

There are no agreement between the parties other than those included in this Plea Agreement. The Defendant enters this agreement freely, knowingly and voluntarily.

12. **VOLUNTARINESS**

The Defendant and his attorney acknowledge that no threats have been made to cause the Defendant to plead guilty. The Defendant and his attorney further acknowledge that no promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and that no additional promises, agreements, or conditions will be entered into unless memorialized in writing and signed by all of the parties listed below.

13. **ACKNOWLEDGMENT OF CONSULTATION**

The Defendant acknowledges that he has consulted with his attorney and fully understand all of his rights with respect to the pending Superceding Indictment. The Defendant further fully understands his rights with respect to the statutory sentences, the statutory sentencing factors set out

in 18 U.S.C. § 3553(a), and the provisions of the Sentencing Guidelines that may apply in his case. The Defendant acknowledges that he has read this Plea Agreement and carefully reviewed every part of it with his attorney. The Defendant acknowledges that he understands this Plea Agreement and voluntarily agrees to it.

Respectfully submitted,

LAWRENCE J. LAURENZI
United States Attorney

By: LAWRENCE J. LAURENZI
United States Attorney
109 South Highland Street, Suite 300
Jackson, TN 383801
(731) 422-6220

_____
DANIEL COWART
Defendant

_____
JOE H. BYRD, JR.
Counsel for the Defendant
Tenn. B.P.R. No. 009915
P.O. Box 2764
Jackson, TN 38302
(731) 424-7188

THOMAS E. PEREZ
Assistant Attorney General

By: JONATHAN SKRMETTI
Trial Attorney

March 29, 2010

9

FACTUAL BASIS FOR COWART GUILTY PLEA
March 29, 2010

In or about September 2008, the Defendant, Daniel Cowart, began corresponding with Paul Schlesselman over the internet. The two discovered a common interest in white supremacist ideology. They continued corresponding and began to talk about the prospect of a killing spree in which they would kill a large number of people, with a focus on killing a large number of black people. They also began to discuss the series of robberies that would be necessary to logistically support their killing spree. These internet conversations occurred while Schlesselman was in Arkansas and Cowart was in the Western District of Tennessee.

In the course of these discussions, Paul Schlesselman sawed the barrel of his 12-gauge shotgun down to 16", below the 18" minimum under federal law, for the avowed purpose of making it "more easily maneuverable." Paul Schlesselman did this in front of his webcam so Cowart could see.

Also via webcam, Cowart showed Schlesselman a diagram of the floor plan of Mitchell's Country Store, a federally-licensed firearms dealer located in the

vicinity of Jackson, Tennessee.  Cowart also photographed the store and transmitted the photo to Schlesselman.  Cowart proposed breaking open the back door of the store with a crowbar, running in, grabbing firearms, and running out. Cowart informed Schlesselman that there were a number of rifles in the store, including an M4 and a .308.  Cowart and Schlesselman agreed that they wanted these rifles for their killing spree, and that they would steal the guns from the store to further their killing spree.

After further conversations about their shared desire to engage in this killing spree and the associated robberies and burglary, the pair agreed that Cowart would travel to Arkansas to bring Schlesselman back to Tennessee.  Cowart drove to Arkansas on October 20, 2008.  Schlesselman showed Cowart the sawed-off shotgun and a .357 caliber handgun that Schlesselman had stolen from his father for the killing spree.  Cowart brought Schlesselman, the firearms, and ammunition from Arkansas back to Cowart's home in Bells, Tennessee.  Both agreed that they were traveling to Tennessee with the weapons in furtherance of their planned killing spree and associated activity.

Cowart and Schlesselman discussed their planned killing spree and determined that they wanted to kill symbolically meaningful numbers of people.

They agreed to kill 88 people because 88 is a white supremacist symbol for Heil Hitler – H is the eighth letter of the alphabet. They also planned to decapitate fourteen black people because there are fourteen words in the slogan of the white supremacist movement.

Cowart and Schlesselman also agreed that their killing spree would culminate with an assassination attempt on Barack Obama, at the time a presidential candidate. The two discussed how difficult it would be to assassinate Barack Obama, and agreed that they would need rifles to have an chance of success. In that context, Cowart told Schlesselman that he would steal a 30.06 rifle, as well as a 12-gauge shotgun and a handgun, plus ammunition, from his father's house in Jackson. Cowart and Schlesselman discussed using the handguns for the robberies since they were small and easy to carry around. They agreed that they would use rifles and shotguns for their killing spree because they were more dependable and had better range.

The day after Cowart brought Schlesselman to Tennessee, the two went to a pawn shop where Cowart purchased additional shotgun ammunition. They then went to another pawn shop where Cowart purchased a magazine for his .308 rifle. These purchases were for the purpose of preparing for the pair's intended killing

spree.

Back at Cowart's home, Schlesselman contacted a friend in Texas. Schlesselman was looking for someone to harbor him and Cowart as they traveled state-to-state in the course of their killing spree. Schlesselman also attempted to contact a friend in California for the same purpose.

On the evening of October 21, 2008, Cowart and Schlesselman, along with a driver, traveled to a house near Cowart's with the intent of burglarizing the house or robbing its occupants. Cowart told Schlesselman that an elderly couple lived at the house. The pair intended to use the proceeds of this crime to fund their killing spree. Schlesselman was armed with the .357 handgun and what was described as "a big knife;" Cowart had a .22 revolver and another big knife. They cased the house but ultimately determined not to break in when they saw a dog and then determined that the occupants might be awake.

The two then dropped off their driver and proceeded to a local Wal-Mart, where they bought ski masks and nylon rope. The purpose of the ski masks was to hide their identities when they committed robberies. The purpose of the rope was to tie people up while they committed robberies. The two then returned to

Cowart's house. On the way back to the house, Cowart drove past the Allen Baptist Church in Brownsville, Tennessee. He slowed the car down and fired a shot into a window of the church with his revolver.

The next day, Cowart and Schlesselman returned to Wal-Mart and purchased .25 caliber ammunition for use in their robberies and killing spree. Shortly thereafter, they began decorating Cowart's car with window chalk. Cowart drew a large swastika and the numbers 14 and 88 on the hood of the car, and wrote an acronym for "What would Hitler do?" on the side of the car. Schlesselman wrote "Honk if you love Hitler" across the rear bumper. The two planned to use the car to drive to the locations of their planned robberies and then to commence their killing spree.

Cowart and Schlesselman were returning to Cowart's house after decorating the car when they were apprehended by the Crockett County Sheriff's Department. The two were immediately detained. Subsequent investigation revealed an internet chat conversation between Cowart and another individual on May 16, 2008, in which Cowart wrote that he would attempt to assassinate Barack Obama, then a major candidate for President of the United States.

_____
(Joseph Byrd) Jr.

_____
(DANIEL COWART)

_____
(Jonathan Skrmetti)

_____
(James W. Powell)